## JARVIS vs. PALMER.

Where the demurrer does not go to the whole bill, it must clearly express the particular part which it is designed to cover, so that upon a reference of the answer to the residue of the bill, upon exceptions for insufficiency, the master may be able to ascertain precisely how far the demurrer goes, and how much of the bill remains to be answered.

A demurrer cannot be allowed in part, where it covers too much; and if any part of the matter covered by the demurrer is also covered by a plea or answer, the whole demurrer is overruled by such plea, or answer.

Parol evidence, to contradict or change the express terms of a written agreement, by proving that one of the parties to the agreement represented that such agreement would give to the other party what the written agreement distinctly declared he should not have, is inadmissible.

The written agreement itself is the best evidence of what the parties intended should be the final and binding contract between them; where nothing has been left out of the agreement, by fraud or mistake, which either of the parties supposed was inserted therein when they executed the agreement.

Where a plea does not go to the whole bill, it must distinctly set out the part of the discovery or relief intended to be covered by it, either in the words of the bill or by such a description that the court will not be obliged to look into the whole bill to ascertain the part thereof which is covered by the plea.

But where a plea is overruled upon this ground, the defect being merely formal, it will be overruled without prejudice to the defendant's right to insist upon the same matters in his answer, as a defence to the suit pro tanto.

THIS was an apppeal from an order of the vice chancellor of the first circuit, overruling the defendant's plea and demurrers to the bill in this cause. The complainant was the general assignee of all the property and effects of A. Brower, for the benefit of the creditors of the latter, by an assignment in trust executed on the 21st of May, 1841. Previous to that time, Brower and F. A. Palmer, the defendant in this suit, had been co-partners in business, as the proprietors of a line of stage-coaches and omnibusses, which partnership was dissolved by a written agreement between Brower and Palmer, under their hands and seals, on the 11th of May of the same year. The agreement recited the substance of the original articles of copartnership, and that it was found for the interest of both parties to

terminate their copartnership, and that it had been agreed between them that the whole partnership stock and debts should vest in, and remain the property of Palmer, and that Brower should release to him all interest in and to the same. The agreement then contained mutual covenants between the parties, that the copartnership should cease and be determined from that day, and a formal conveyance from Brower of his half part, share and interest in the partnership property and effects, to Palmer, in consideration of one dollar, together with all the profits, proceeds, gains and advantages which had been or should thereafter be made by the partnership; so that Brower should have no claim or demand on Palmer on account of the same. And Palmer was to hold such partnership property and effects to his own use and benefit, subject, however, to the several judgments which were standing on record, against Brower, which were a lien upon his interest in such property and effects, and to the rent which was a lien thereon. By the agreement, to enable Palmer to collect and receive the debts due to the partnership for his own use, Brower authorized him to demand, sue for, and receive such debts, and to execute releases and discharges for the same. Palmer on his part, and in consideration of the premises, covenanted to pay and discharge all debts and damages whatsoever due and owing from the firm, or which Brower was jointly holden for with him; and also to pay all judgments against Brower, and all rents and other claims, which at the date of the agreement were a lien upon the partnership property or effects, or on the interest of Brower therein; which judgments, liens, rents, dues and demands were set forth in schedule B. annexed to the agreement.

On the 13th of May, 1841, another agreement was made between the parties, under their hands and seals, reciting the agreement of Palmer to pay the judgments, debts and liens, and that the amount thereof, in the settlement of accounts, had been estimated at $10,649, but were received and allowed by Palmer for $8177,24, and containing a covenant on the part of Palmer, that if, upon a final payment by him, the amount should be found to be less than the last mentioned sum, exclusive of the

partnership debts, he would pay to Brower, or his assigns, so much as the amount should be found to fall short of the sum last mentioned.

The bill, after stating these two agreements, and the making of the assignment to the complainant by Brower, for the benefit of his creditors, alleged that all the partnership property and effects were delivered up to Palmer, in compliance with the terms of the first agreement, who took possession of the same and used and enjoyed them as his property. The complainant further alleged in his bill, " that it was verbally agreed and understood, by and between Brower and Palmer, that if after the collection of the debts and demands due the copartnership, and the payment of the copartnership debts, there should be any balance, such balance, notwithstanding the terms of the agreement of dissolution, should be equally divided between them ; and that Palmer should account with Brower for his collections of the debts due the firm, and pay the half thereof to him, after payment of the partnership debts." And the complainant averred that, at the time of the execution of that agreement, the parties thereto declared, that such was the intent and meaning of the same; and that Brower was induced to execute such agreement, under the full belief that such was its intent and meaning, and upon the *promise* of Palmer to that effect. The bill further stated, that the parties agreed for an equal division of the proceeds of the collections of the debts due the firm at the time of the dissolution, and that the provision in the written agreement that Palmer should receive all the copartnership debts for his own use, was a fraud upon Brower; that, to induce Brower to execute the written agreement, Palmer asserted to him that his signing and executing the same would not deprive him, either at law or in equity, of his half of such debts and claims, or made some assurance to that purport and effect ; and that Brower, believing and relying on such representations, executed the agreement. And the complainant charged, that, at the time of making such representations, Palmer was advised by his counsel, and others, of the legal effect of the agreement, and that it might deprive Brower of his rights ; that notwithstanding such advice, Palmer persuaded and assured

Brower to the contrary, with the fraudulent design of depriving him of his just claim, and of the half of such partnership debts; and that Brower, believing and confiding in these statements, executed the agreement, believing, when he so executed it, that it was a part of that agreement that the partnership debts, when collected, were to be divided between him and Palmer, and that Brower was so assured by Palmer at the time. The bill further alleged, that there was no consideration paid or given by Palmer, in any shape, for the assignment of Brower's half of the said debts, which by the terms of the agreement, and the fraudulent procurement of Palmer, were to be collected by the latter for his own use and benefit. The complainant therefore insisted, that Brower being then indebted to a greater amount than was provided for in the agreement, had no right to make a power authorizing Palmer to collect and receive the debts for his own benefit; and that the said power was obtained by fraud, and was fraudulent and void as against the complainant, and the creditors of Brower provided for in the assignment of Brower to the complainant; and he also insisted, that Palmer was bound to account for the half of such partnership debts, and to pay them to the complainant, for the benefit of such creditors.

The bill further stated, that Palmer pretended that he had fully performed his part of the agreement, but that a debt mentioned in schedule B., annexed to the agreement, and due to Ryerson, a creditor of the firm, remained due and unpaid, which Palmer refused to pay, and that Brower had been called upon to pay the same. The complainant also charged, in his bill, that although Palmer was aware of the assignment to him from Brower, and had been repeatedly requested to render him an account of his payments pursuant to the agreement, and of his proceedings in the premises, and to come to a settlement with him, he had refused to render or give any account, or to make any settlement; and that it was impossible for the complainant to ascertain, with any certainty, what payments had been made, Palmer having all the books and papers of the firm; although the complainant charged that, as he believed, there was a large amount due to him, as the assignee of Brower, on account of the

collection of the debts due to the firm. He therefore prayed a full answer in the premises, and that the defendant might discover and set forth all the moneys collected by him from the debts of the firm, and also what debts of the copartnership he had paid, and when and to what amount, and also what payments, and when the same were made, and to whom he had made them, under the agreements mentioned in the bill; that the agreement for the dissolution of the copartnership might be so amended that the balance of the debts of the firm collected, beyond the payment of the copartnership liabilities, might be divided equally between the complainant and the defendant; that the part of the agreement which authorized the defendant or his representatives to collect or receive, to his or their own use, all the copartnership debts, might be cancelled and expunged from the agreement, so as to make the agreement correspond with the actual agreement between the parties; that the collections from the partnership debts should be equally divided, after paying the debts due from the firm; and that the defendant might be decreed to pay to the complainant any amount which, upon accounting, should appear to be due him as the assignee of Brower, or for such other or further relief as might be agreeable to equity.

The defendant, as to all the relief prayed for, as far as such relief related to an account of the moneys collected from the copartnership debts mentioned in the agreement of the 11th of May, 1841, or to the amending or altering that agreement, or to the division of the balance of the moneys collected over and above the payment of the debts due from the firm, and as to all the discovery asked by the bill, *as far as such discovery related in any way to such relief,* except so much of such discovery as related to the belief of Brower, at the time of the execution of that agreement, that it was a part of the agreement that the copartnership debts, when collected, should be divided between him and the defendant, and as to the defendant's so assuring him, pleaded the said written agreement in bar; insisting that the written agreement was conclusive as to the agreement and understanding between the parties at the time of the execution of

the same, and that the covenant of the defendant to assume and pay all the debts of the firm, was a good and valuable consideration for the assignment of the partnership property mentioned in the agreement. And the defendant averred in his plea, that Brower, at the time he executed the agreement, did not believe that it was a part of such agreement that the copartnership debts, when collected, should be divided between him and the defendant, and that Brower was not so assured by the defendant Palmer. This plea was supported by an answer denying . that Brower believed that it was a part of the written agreement that the debts due the firm should, when collected, be divided between him and the defendant; and denying that the defendant so assured Brower. The answer, on the contrary, stated that the agreement was repeatedly read to Brower, immediately before it was executed, and that at the time of the execution of the agreement, Brower was attended by counsel, learned in the law, and acted under the direction and advice of such counsel.

To so much and to such parts of the bill as sought an answer respecting the agreement of the 13th of May, 1841, and prayed that the defendant might account with the complainant in respect to his acts and doings under that agreement, and that he might be decreed specifically to perform such agreement, the defendant demurred, first, because the agreement upon its face was without consideration; second, because it was not charged in the bill, that the judgments, liens and rents in that agreement mentioned, did amount to less than $8177,24, mentioned in the agreement; third, that the remedy of the complainant, if any, was in a court of law; and fourth, that the court of chancery could not enforce the specific performance. of a covenant as to personalty.

To so much and such parts of the bill as sought an answer respecting the agreement of the 11th of May, 1841, and respecting the schedule B. and whether the defendant pretended that he had fully performed the conditions in that agreement contained, whether the debts of the firm to Ryerson remained due and unpaid, whether he had called upon Brower for pay-

ment, and whether the defendant refused to pay the same, and pretended it was not embraced in the agreement, and as prayed that the defendant might be decreed to pay the same, the defendant demurred; upon the ground that the remedy of the complainant, if any, was at law.

And to so much of the bill as sought an answer, from the defendant, respecting the agreement of the 11th of May, 1841, and whether the assignment in that agreement mentioned was without consideration, and was fraudulent and void as against the creditors of Brower, and prayed that the defendant might account with the complainant for one-half of the copartnership debts collected by the defendant, and pay the same, the defendant also demurred; 1st. Because it was not alleged affirmatively that Brower was insolvent, but only by way of recital. 2d. Because it was not alleged that there was more than sufficient copartnership property assigned to the defendant, to pay the debts of the firm.

The vice chancellor overruled the plea and demurrers absolutely, with costs; and ordered the defendant to pay the costs, and to answer the bill, within forty days; or that an attachment issue against him.

*R. F. Winslow*, for the appellant.

*S. B. Judah*, for the respondent.

THE CHANCELLOR. The first demurrer, which is to so much of the bill as seeks an answer and discovery as to the agreement of the 13th of May, 1841, and an account in respect to the acts of the defendant under that agreement, appears to be well taken; and is not overruled by the plea. It is true, the complainant, under the agreement referred to in that demurrer, would be entitled to payment of the amount which the judgment and other liens, exclusive of the partnership debts, should fall short of the $8177,24. But I have not been able to find any allegation or charge in the bill, either upon information, belief or otherwise, that these judgments and liens did fall short of that sum.

Jarvis *v.* Palmer.

And to entitle the complainant even to a discovery in aid of a suit at law, to recover the difference, the complainant must at least allege that he believes they fell short. For that reason the complainant is not entitled to any discovery or relief in relation to the matters embraced in this demurrer. The first demurrer should, therefore, have been allowed.

The second demurrer was properly disallowed, inasmuch as it covers every thing in the bill *respecting* the agreement of the 11th of May, 1841, and the schedule annexed, as well as the discovery and relief respecting the debt of Ryerson, and the payment thereof. The broad terms of this demurrer, therefore, necessarily cover the allegations and charges in the bill, that the agreement of the 11th of May was procured to be executed by the false assurance of the defendant that it contained a provision, or that it was a part of such agreement, that the copartnership debts, when collected, should be divided between Brower and the defendant. And as that charge in the bill *respecting* the agreement of the 11th of May, 1841, is denied, both by the answer and the plea, this demurrer is overruled by such plea and answer. The defendant did not probably intend to cover so much of the discovery sought by the bill as is actually embraced in the second demurrer. But the rule of chancery pleading is such, on this subject, that if the demurrer does not go to the whole bill, it must clearly express the particular parts which it is designed to cover; so that upon a reference of the answer to the residue of the bill, upon exceptions for insufficiency, the master may be able to ascertain precisely how far the demurrer goes, and how much of the bill remains to be answered. (*See Welf. Eq. Pl.* 266 ; *Devonsher* v. *Newenham,* 2 *Sch. & Lef.* 205.) And as a demurrer cannot be allowed in part, where it is too broad, if any part of the matter covered by the demurrer is also covered by a plea, or answer, the whole demurrer is overruled by such plea, or answer. (*Jones* v. *The Earl of Stratford,* 3 *Peere Wm's Rep.* 81.)

The third demurrer cannot be sustained, because it is liable to the same objection as the second. It also covers a part of the relief embraced in the plea; to wit, the account and pay-

Jarvis *v.* Palmer.

ment of one half of the copartnership debts collected by the defendant.

The plea appears to be good in substance, and is not, as the complainant's counsel supposes, a plea of matters appearing upon the face of the bill. It is true the pleader urges objections appearing upon the face of the bill, in bar; but he urges them in connection with the averments in the plea negativing the belief of Brower, that there was a provision in the written agreement which was not in fact there, and also negativing the allegation that the defendant assured Brower that there was such a provision in the agreement. In the absence of any false representation on the part of the defendant, or any misapprehension of Brower as to the existence of such a provision in the agreement, and supposing the fact to be that Brower knew precisely what the terms of the written agreement were, it is impossible to imagine how Brower could have supposed the effect of the agreement would be to give him the right to the one half of the debts of the firm which should be collected. For the language of the written agreement, as to the exclusive right of the defendant to collect and receive all the debts for his own use and benefit, is just as clear and explicit as it is in relation to the exclusive right of the defendant to the horses and carriages and other property of the firm. And to allow parol evidence to contradict or change the express terms of a written agreement, by proving that one of the parties to the agreement represented that such agreement would give to the other party what the written contract distinctly declared he should not have, would be a dangerous innovation upon the settled rule of law on this subject. That rule is, that the written agreement itself is the best evidence of what the parties intended should be the final and binding contract between them; where nothing has been left out of the written contract by fraud or mistake, which the parties supposed was inserted therein when the agreement was executed by them.

This plea, however, is defective in point of form; because it does not state with sufficient certainty the part of the discovery, sought by the bill, which it was intended to cover. The same

rule applies to pleas as to demurrers in this respect; that where the plea, or demurrer, do not go to the whole bill, but only to a part of the discovery or relief sought, it must clearly and distinctly point out the particular parts of each which such plea or demurrer is designed to cover. That is, the part of the discovery and relief intended to be covered by the plea or demurrer must be set out in the words of the bill or by such a description that the court will not be obliged to look into the whole bill to find the part which is covered by the demurrer or the plea. (*Johnson* v. *Johnson,* 2 *Moll. Rep.* 415. *Chetwynd* v. *Linden,* 2 *Ves.* 451. *Welf. Eq. Pl.* 267, 298.) Here the plea is as to certain parts of the relief sought by the bill, which parts of the relief are clearly specified; but it is to all the discovery asked for by the complainant, *as far as such discovery in any way relates to the relief before mentioned,* except as to the discovery, specifying it, which is made by his answer in support of the averments in the plea. It is evident that by this mode of pleading, it is impossible to ascertain what part of the discovery sought by the bill is covered by the plea, without travelling over the whole bill, and determining what part of the discovery sought relates to the portion of the relief specified in the plea. In other words, the duty is thrown upon the court, by this plea, of searching through the whole bill for the purpose of ascertaining what part of the discovery called for, by the bill, is material or relevant to the particular relief covered by the plea. This is not allowable; and the plea, therefore, was properly overruled. But as this was a mere formal defect, the plea should have been overruled without prejudice to the defendant's right to insist upon the same matters in his answer.

The order of the vice chancellor must, therefore, be reversed, so far as relates to the first demurrer, and that demurrer must be allowed. And the overruling the plea and the other demurrers must be without prejudice to the defendant's right to insist upon the same matters in his answer. Neither party is to have costs, as against the other, upon this appeal.