## KENT *vs.* G. W. and T. H. MANCHESTER.

Principles which govern courts of equity, in *reforming agreements* on the ground of inadvertence and mistake.

THE plaintiff sold to the defendants a farm, with the stock, utensils, &c., by a contract which embraced in its terms all the *personal property* on the farm and in the house, save a few articles specially excepted by name. The purchasers

claimed the *household furniture*, and the vendor insisted that such was not the contract, but that the furniture was intended to be excepted.  This action was brought for the purpose of having the contract reformed, on the ground of mistake and inadvertence.

*Pomeroy & Hunt*, for the plaintiff.

*Smith & Kernan*, for the defendants.

BACON, J.  The complaint in this case is filed to procure the reformation of a contract entered into between the parties concerning the sale of a farm and certain personal property by the plaintiff to the defendants.  The allegation, in substance, is, that the proper clauses to carry out and express the true bargain and agreement between the parties were omitted through inadvertence and mistake on the part of the plaintiff, and through inadvertence and mistake or fraud on the part of the defendants.  The allegation as to fraud may, however, be dismissed, inasmuch as there is no testimony whatever to uphold any such suggestion, and the counsel of the plaintiff, on the argument, very frankly and properly waived any such pretense.  The case, then, is to be treated purely as an application for relief, addressed to the equitable powers of the court, grounded on the allegation of inadvertence and mistake.

The power of the court to grant relief, in such cases, is now well established, although it was for a time looked upon with disfavor, as being in conflict with the sound principle of the common law, which precludes parol evidence to add to, or vary, the terms of a written contract.  The rule was of necessity, and from the highest dictates of justice, relaxed in the case of a fraudulent suppression of the true and actual terms of a contract, or the incorporation of stipulations never within the agreement or contemplation of the parties, and upon a like ground of principle—to advance justice and prevent sur-

prise and injury—the rule was extended to cases of innocent accident, inadvertence or mistake.

But in extending the rule to this class of cases, it was found to be quite necessary to qualify it with conditions, lest it should work more injury than it would be likely to redress. Among these are the following:

1. Relief will be granted in the case of written instruments, only where there is a plain mistake, *clearly made out by satisfactory proofs.*

2. The mistake must not only be established to the satisfaction of the court, but it must be a *mutual mistake.* It is not enough for the plaintiff who seeks relief to allege that by inadvertence and mistake on his part he was led to execute a contract which did not express the real agreement of the parties; but it must be alleged and proved that the other party also labored under a mistake. So strongly has this rule been sometimes held, that Lord Thurlow, in one case, (*Shelburne* v. *Inchiquin,* 1 *Br. Ch. Cases,* 347,) declared that the difficulty of proof was so great, that "there was no instance of its prevailing against a party insisting that there is no mistake." This is not now held with such stringency; for an answer denying any mistake may doubtless be overcome, but it must be by very strong and most satisfactory proof.

3. Ignorance of the law is no ground of relief. If a party labors under a mistake of fact, and executes a contract with a clear understanding of its provisions, he can ask no dispensation from its requirements, nor seek to vary its terms, because he did not suppose the language employed really meant what its terms import. The courts do not undertake to relieve parties from their acts performed with a full knowledge of the facts, and where neither surprise nor fraud exists, through a mistake of the law.

4. When a contract, whose terms are manifested by writing, is sought to be changed and reformed, it should be made clearly to appear what the real contract was. Its terms should be definite and precise; and it will never answer for a party to

call upon a court to spell out a contract, or for the court to impose upon the parties one which neither of them has really made.

These rules are, in substance, to be found laid down by most of the elementary writers on the subject in question, and are abundantly sustained by authority. It will be sufficient to refer generally to 1 *Story's Equity Juris.* §§ 155 to 166; 2 *John. Ch.* 51, 274, 585, 630; 6 *id.* 169, 170; 11 *Paige,* 658; 17 *John.* 377; *Hopk.* 134. There is in truth no struggle in regard to the legal principles involved in this case, and the only difficulty I have encountered is so to reconcile the facts of this case as to afford the relief the plaintiff seeks. The main facts testified to by the plaintiff are unquestionably true, and the evidences of sincerity and integrity which characterized his appearance on the stand were such as to command my respect and confidence. Indeed, my impression amounts almost, if not quite, to absolute conviction that he never intended to include his household furniture among the personal effects which the bargain embraced. His conduct throughout, with perhaps an occasional instance of silence where it would have been natural for him to have spoken, was consistent with this theory.

In the early interviews with Stephen Manchester which preceded the actual making of the contract, the property designed to be parted with was unquestionably designated and the prices substantially adjusted, and the sum total of the purchase corresponds, with singular exactness, to the amount invested in the contract. The evidence, however, fails to show with equal clearness that the items and amounts were named over, and assented to by the defendants at the time the contract was actually drawn up, and when the minds of all parties were necessarily concerned in adjusting its terms and limiting its precise extent.

The storing of the furniture in the rooms at the house is also a circumstance of great significance, as bearing upon the conclusion of the plaintiff's mind as to the subject matters

Kent v. Manchester

embraced in the contract, as well as the fact that he assumed to dispose of, as well as to remove from the premises, portions of personal property which would seem to be clearly within the terms of the contract. If the deposit of the furniture had been in pursuance of an agreement made with the defendants, or if, being apprised of the fact and the object of it, they had objected to such disposition, it would have afforded somewhat persuasive evidence that they understood the contract as the plaintiff testifies that he did. The testimony fails, however, to establish either of these points.

On the other hand, I am met by facts and considerations difficult to be reconciled with the position taken by the plaintiff, and more difficult to harmonize with the legal principles which are held to govern cases of this description.

1. Both the defendants, in their answer, explicitly, and in the strongest manner, deny that the contract, as drawn up and executed, does not express the true agreement of the parties; and they deny that any language was used that was not fully understood; or that any thing was omitted through inadvertence or mistake. And this denial in the answer is supported and fortified by the testimony of both Stephen and Thomas Manchester, and to a considerable extent is sustained by the testimony of Hadley, the scrivener who reduced the contract to writing.

2. The plaintiff himself had by far the most active agency in dictating, not only the general terms and provisions of the contract, but the precise clause which was inserted therein, and upon which the question has arisen. The change in the mode of drawing up the contract was undoubtedly unfortunate; and had the original purpose been pursued, it is probable all future difficulty would have been avoided. By whom the change was suggested is not clear; but there is no reason to think there was any improper or covert object in view in that suggestion. At any rate, the plaintiff acquiesced in it; and when called upon to name the property excepted from the sale, he did so deliberately, and the scrivener followed im-

plicitly his dictation.    When asked if the contract embraced all the excepted property, he replied in the affirmative.    The entire instrument was read over twice at least, and· deliberately executed, and the parties separated without a suggestion that it did not contain the contract, fully and entirely, of all the parties thereto.

3. Assuming now, as we may, that the plaintiff did not believe or understand that the contract embraced his household furniture, and that if he had so supposed, he never would have executed it, we are met, on the other hand, by the equally explicit declaration of the defendants, that if they had not understood the contract to embrace the furniture, it would not have been executed on their part.    The explanation of the state of the plaintiff's mind, and the conclusion he formed, is very probably to be found in the fact testified to by him, that he was not sure that by the expressions, "all personal property of every name and nature now on the premises," the household furniture would be included, although when recalling this language, he was troubled with the strange fancy that it might embrace his bonds and mortgages ; and this was in truth the main ground of his solicitude.    If this was the error under which he labored, it was not a mistake as to the fact, that language was employed in the contract which he fully understood, and which would in truth embrace the furniture, but it was a mistake as to the legal import of the words ; and this is one of those kinds of mistake for which the courts have no remedy.    It is a mistake of the law, and not of fact, and is beyond the reach even of equity.

4. Again ; the evidence leaves it uncertain even as to what the plaintiff claims the contract should have been.    In the complaint, the language which it is insisted the court should direct to be inserted is put in two different forms, and the alteration asked for by the plaintiff, in his interviews with the defendants, differs from both the alternatives suggested by the complaint.    All this exemplifies and illustrates the difficulty in which we become involved the moment we leave the written

contract, and undertake, by the light of outside parol evidence, to determine what were its real terms and conditions. This difficulty is so great that, except in a most clear and almost uncontradicted case, it is safer, as a general rule, to leave the writing to be the interpreter of the parties, than to allow its terms to be varied by evidence, in its nature less satisfactory, and in ninety-nine cases out of a hundred, far less to be relied upon. Occasional injustice may doubtless be wrought, and honest but simple minded men be overcome by the crafty or the astute; but it is on the whole better to abide by the rule, "*litera scripta manet.*" Recollections are sometimes vague, and impressions deceitful and illusory, but the written word stands, and speaks a uniform language. "To alter a clear written contract," says Chancellor Kent, in a case very similar to this, "without proof of the alleged new agreement, and when the charge of mistake is denied in the answer, would be destructive to the certainty and safety of written contracts."

Upon the whole, then, although with some hesitation from the consideration I have above alluded to, I have come to the conclusion that the relief asked for in the complaint must be denied, and the complaint dismissed. But, under all the circumstances, I am willing, as was the chancellor, in *Lyman* v. *United States Ins. Co.* (2 *John. Ch.* 634,) that it should be without costs; and a judgment to this effect may accordingly be entered.

[ONEIDA SPECIAL TERM, May 17, 1859. *Bacon*, Justice.]