## GARNAR vs. BIRD and others, executors, &c.

A bond will not be reformed, by striking out portions alleged to be erroneous, where there is no evidence to show it was not drawn in exact conformity to the agreement previously made between the parties, but on the contrary, the complaint alleges that the bond was drawn according to such agreement, and it is clear that both obligor and obligee understood that the bond should contain the provisions sought to be stricken out.

The fact that the obligor employed a lawyer, who gave him bad advice, and thereby deceived him as to his rights and induced him to execute the bond, furnishes no authority to the court to alter the contract of the parties.

The authority which a court of equity has, to reform a written instrument, does not extend to any alteration of a contract, but only to making the contract in which a mistake has occurred, correct, by conforming it to what was actually agreed upon between them.

Courts do not relieve from acts done under a false impression as to the facts, though under a mistake of the law. The parties must be left to other remedies founded on fraud, if it existed; or, if relief can be granted in any case for mistake of the law, founded on the fact that the adverse party had parted with nothing of any real value.

To a suit brought for the partition of a lot, several persons who owned the rear part thereof were all made parties. In the decree in that suit the description of the property ordered to be sold did not include the rear of the lot. All the parties having any title to the lot gave releases, except F. On the sale the whole lot was sold, and F. was paid, and gave a receipt for, her share of the proceeds, but executed no release. She, knowing of the sale, made no objection thereto. *Held* that her acts, in not objecting to the sale, and afterwards receiving payment for her share, *estopped* her, and her representatives, from claiming any interest in the land; and that the sale of the lot under the decree in the partition suit, was to be considered as conveying a good title to the whole lot, although it was not correctly described in such decree.

Although a mistake as to the law forms no ground for reforming a contract, yet where a party acting under a mistake of law or of fact, does acts which mislead the adverse party, he is estopped, as well as if he was not acting under such mistake.

THIS action was brought upon a bond given in part payment for a lot of ground sold by the plaintiff to William E. Bird, the testator of the defendants. The counsel for the testator, on examining the title, was of the opinion that it was defective, and so advised his client. This bond was given with a recital stating that it was

necessary to procure certain releases, which could not then be obtained, but that the plaintiff should cause the same to be procured. And the condition of the bond was for the payment of the same upon and after the perfecting of the title, within ten years thereafter; and there was added a condition that the obligor would pay the interest thereon annually, and that the bond should be void if the title should not be perfected in ten years. This was in December, 1856. The releases were not procured, but this action was commenced in February, 1867. The complaint contained allegations that the plaintiff was misled and deceived by the representations of the testator and of his counsel, and that believing the same to be true he agreed with the testator to give the bond, in the form in which it was executed. It further alleges that the title to the premises sold was not defective, but was good, and that the conveyance from the plaintiff vested in the grantee a perfect and absolute title to the premises.

The plaintiff prayed for a reformation of the bond by striking out the recitals therein, and such part of the condition as did not provide for the payment of the principal sum within ten years; and he also prayed for judgment for the amount due.

Upon the trial of the cause, judgment was rendered decreeing that the bond should be reformed as prayed for, and giving the plaintiff judgment for the amount secured by the bond, with interest from the last payment, amounting in the whole to the sum of $569.40, besides costs.

From that judgment the defendants appealed.

*Joseph S. Ridgway,* for the appellants.

I. The plaintiff has no right of action, and cannot recover upon the bond in suit, the plaintiff not having complied with or performed the terms and conditions expressed and stipulated therein, and mutually agreed upon at the

Garnar *v.* Bird.

time, by and between the parties thereto, and upon the performance of which by the plaintiff the sum stipulated was to become payable.

II. The plantiff is not on any principle of equity entitled to the relief he seeks, or to any relief. 1. There was no mistake or misrepresentation of fact, and the plaintiff should not be permitted to avoid his contract. (*a.*) There is no proof that at the time the contract in the bond was entered into the plaintiff was mistaken concerning any matter of fact, or that any false or erroneous statements or representations were made by the defendant or by any other person to the plaintiff concerning any matter of fact. The plaintiff testifies that the attorney (who drew the deed for him and examined the title for the purchaser) said the title was imperfect. This was a conclusion and matter of law, and even if erroneous, it was an error of opinion, a mistake of law, and not a misrepresentation of fact. It was stated, not as a fact, but as an opinion, and the "grounds" for such opinion were stated by said attorney. The plaintiff testifies: "Said attorney stated the grounds, and told the plaintiff there was a defect in regulating the business of Mrs. Turner, that is to say in the partition proceedings." The plaintiff does not say or pretend that any matters of fact were untruly stated; on the contrary, he testifies "he could not say the objections so made were not founded in fact." (*b.*) The plaintiff is chargeable with notice of the contents of all deeds and other papers and proceedings under or through which he claims title. And he does not say, and there is no proof, that he did not have actual notice and knowledge of all the facts, on which such opinion, that said title was imperfect, was founded. (*c.*) The plaintiff, after the lapse of the ten years, reached, with or without the aid of counsel, the conclusion that the receipt by the heirs of the proceeds of the sale of the parcel of land not described in the partition proceedings, amounted to an implied ratifi-

cation of such sale of said parcel. Whether it did or did not amount to a ratification, is a conclusion from the facts, and a matter of law. The plaintiff does not say he did not know or have information of the fact of such receipt, and of all the facts, at the time he entered into the contract. The presumption is that he did know, as he was bound to know, and there is no proof that he did not have actual notice and knowledge of all the facts. 2. To permit the bond to be reformed would in effect vary the terms and character of the contract entered into by and between the parties thereto, and after the defendants had in good faith fully performed the contract on their part, make for the defendants, and without their consent and without consideration, an entirely new contract, and one which neither of the parties thereto ever made or entered into or assented to, or intended at the time to make or enter into or assent to, and would be unjust to the defendants, and inequitable. (a.) The defendant's testator entered into the contract with the same knowledge and information the plaintiff had of the facts, and the like belief in the opinion expressed, that said title was imperfect, and in entire good faith. And there was and is no fact concerning which either party was mistaken, or any misrepresentation made. (b.) The existence of such belief that a title is imperfect, whether it be well or ill founded, tends to affect injuriously the holder's estate in the land, and the value thereof, and to operate as a bar to the full use and quiet enjoyment thereof by him, and to deter him from making improvements, and to induce an abatement from price in case of sale. (c.) The plaintiff could not, even if proof was admissible, nor will this court undertake to determine the extent to which the testator's estate in the land was so injuriously affected by such belief, or measure the amount of the actual damage suffered by the defendant's testator and his devisees, by reason of the operation of said causes; or say how far such causes ope-

Garnar *v.* Bird.

rated to prevent the improvement or sale of said land by the testator in his lifetime; or to what abatement in the price and value of said land his devisees submitted; or that said devisees did not, upon the sale thereof by them, in fact abate and lose $500 of such price and value, because of such defect or supposed defect of title. The amount was, by mutual agreement between the parties at the time, fixed and liquidated at $500. (*d.*) The contract·in said bond is in effect a waiver and release by the testator and his devisees of any claim for any and all damages resulting from such defect, other or greater in amount than so liquidated and expressed. The covenants in said bond are mutual and binding on the plaintiff as well as on the defendants; and the plaintiff is, by his contract in said bond, in equity as well as in law, *estopped*, in like manner as the defendants, from showing the damages to be other or different in amount than the damages so liquidated and expressed in,the bond.

III. But the appellants submit that the title was "imperfect," and contend that the opinion of counsel to that effect was correct, and that there was not even a *mistake of law.* (*a.*) The property sought to be partitioned is, in in the complaint in the action and in the decree of partition and sale, described by metes and bounds. The parcel of land forming the rear portion of the lot in question is not mentioned or described in the complaint or decree or proceedings in the action. (*b.*) The master had no title to said land; and so far as that rear portion of the lot in question is concerned, he had no power or authority to sell or convey the same. The power and authority of a master could rightfully and with effect be exercised only as to the specific parcels described in said decree, and thereby partitioned and directed to be sold and conveyed. He had no power or authority to sell or convey other parcels of land not described in the complaint or decree, or thereby directed to be sold or conveyed. Under a mas-

ter's deed of property not mentioned in the decree, or other proceedings in the action, and which he was not authorized or empowered to sell or convey, a purchaser would not acquire a *perfect* title. (*c.*) But the respondent will contend that the master paid, and the heirs received, the proceeds of the sale of the land sold, including the parcel in question not described in the decree, and thereupon argue that such receipt amounted to an *implied* ratification of such sale of said parcel. Several questions and objections are suggested which might have been raised at the time said contract was entered into. 1. The master was an officer of the court, and not an agent or attorney of the heirs. His authority was derived from the court, and his acts were not the subject of ratification by the heirs. If so, then wherever the equitable title, and whatever the equitable rights of the purchaser, the *legal* title remained in the heirs at law, as tenants in common, and did not pass. The defect would be properly remedied by an amendment of the decree and proceedings. 2. A mere ratification by parol, (even in express terms,) neither conveys nor gives a deed previously executed by a master, without any title or authority, the legal effect of a conveyance of an estate in fee in land. Nor does it amount to a release. At most, it forms but the ground or basis upon which a purchaser could in equity claim, and a court of equity could adjudge and decree that a release be executed. The purchaser was under no obligation to assume the risk and expense of possible litigation to obtain a release and clear the title. 3. The objection applies with still greater force where the alleged ratification is implied or inferential. The receipt by the heirs, for the proceeds, bears no evidence, nor is there any proof, that the heirs knew that the sum received included proceeds of any property other than that described in the complaint and decree. They had a right to presume that the same was

Garnar *v.* Bird.

the proceeds of property described in the complaint and decree and directed to be sold.

IV. The rule is well settled, that a mistake of the law is not a ground for reforming a deed or contract founded on such mistake. This rule is recognized as settled and is' approved in the case of *Champlin* v. *Laytin*, (18 *Wend.* 407–425,) cited by the court at special term. In that case the court held that the respondent was entitled to relief upon the ground of mistake in matters of fact. It was upon that ground the chancellor placed his decision, and upon that ground his decision was affirmed. (*Id.* 419–425.) The reasoning by the court in that case in support of the principle upon which the rule is based is exhaustive and conclusive, and the language admits of no doubt that such is the rule, and gives no countenance to any departure from it. The current of authority is uniform, and to the same effect.

*S. F. Cowdrey,* for the respondent.

I. At the time of the execution of the bond by W. E. Bird, deceased, to the plaintiff, the plaintiff's title was good. 1. Richard Turner, at the time of his death, in 1835, was the owner of the whole of the premises in question. 2. The partition proceedings included all the heirs at law of the said Richard Turner, William Fogal and Charlotte E. his wife, the latter being one of such heirs, being complainants in the suit. 3. The description in the bill of complaint and decree of sale, although including only a part of the lot in question, was supposed by all the parties to the suit to include the whole thereof; and the proceedings throughout were conducted as if the whole of such lot was included. (*a.*) The master duly advertised "the lot and two story brick front house, * * * known as 351 Front street, being twenty-five feet front and rear, by seventy feet in depth," and posted and circulated hand-bills describing the same as above. The mas-

ter also caused a survey of the premises in question to be made, and maps to be exhibited on the sale, representing the whole of the said lot. (b.) The master's report of distribution shows that the proceeds of sale included the proceeds of sale of No. 351 Front street, the lot in question, and that Charlotte E. Fogal received her full proportion and share of the whole proceeds. (c.) The said Charlotte E. Fogal was not only one of the moving parties in causing the sale of the lot in question, (being one of the plaintiffs,) but her attention was distinctly called to the statement by the master, showing the component parts of such proceeds. And the order for confirmation of the master's report of the distribution was entered by the attorney for Mrs. Fogal. (d.) There is no room for the slightest suspicion that Mrs. Fogal did not know she was receiving her full share of the proceeds of No. 351 Front street, the premises in question. 4. All the heirs at law of Richard Turner, deceased, executed the release to W. E. Bird, of their interest in the lot in question, at the time of conveyance by the plaintiff Bird in December, 1856, except two infant children of Mrs. Charlotte E. Fogal, who was then deceased. 5. The receipt by Mrs. Fogal of her distributive share of the proceeds of sale of the lot in question is an entire bar of her right, title and interest in the said lot. (*Martin* v. *Sherman,* 2 *Sandf. Ch.* 344. *In the matter of accounting of Nelson Place,* 7 *N. Y. Leg. Ob.* 217. *Overbach* v. *Heermance,* 1 *Hopk.* 340. *Requa* v. *Holmes,* 16 *N. Y. Rep.* 200.)

II. The recital in the bond now in suit, that "in order to perfect the title of said premises, it is necessary that all the children of Richard Turner, deceased, &c., should execute releases of said premises to said Bird," was untrue as a matter of fact.

III. The plaintiff was ignorant of the facts connected with his title. He was not only ignorant of those facts, but he was so ignorant of all his legal rights that he put

on record the bond; he did not record the mortgage. If the mortgage had been recorded it would have been notice to purchasers from Bird, and he could not have sold the property without paying the mortgage.

IV. The plaintiff was misled by the misrepresentations of William E. Bird and his lawyer.

V. There is not the slightest room for inference that Bird's lawyer was the agent for the plaintiff. 1. The lawyer was examining the title for Bird, and in that connection alone the plaintiff requested him to draw his deed. 2. The plaintiff did not employ the lawyer of Bird for any other purpose, except simply to draw the deed.

VI. The title of the plaintiff being perfect at the time the bond was given, the taking of the bond was founded on a mistake of fact. (*Champlin* v. *Laytin,* 1 *Edw. Ch. R.* 471. *Same* v. *Same,* 6 *Paige,* 189. 18 *Wend.* 410.) But if held to be a mistake of law, the plaintiff is still entitled to relief. (*Kerr on Frauds,* 330.)

VII. The equities of the case are all in favor of the plaintiff. The plaintiff has acquired no beneficial interest by the bond. Mr. Bird has parted with nothing by accepting the plaintiff's deed; he has obtained a valid title to his lot, and he has not paid the purchase money. And the case is brought directly within the rule, where courts of equity will interfere to correct mistakes and reform legal instruments. (*Champlin* v. *Laytin, supra. Gillespie* v. *Moon,* 2 *John. Ch.* 596. *Stoughton* v. *Lynch, Id.* 222. 1 *Greenl. Ev.* 341. *Willard's Eq.* 59 *to* 76. *Kerr on Frauds,* 337, 340, 349.)

VIII. The condition of the bond does not require the obtaining of the release, as an arbitrary and independent fact, but only in connection with the assumed necessity of so obtaining them, for the purpose of perfecting the title. The recital in the bond states, as an assumed and admitted fact, "that in order to perfect the title," it is necessary that all the children of Richard Turner, &c., should exe-

cute releases; that the amount of damage which the said Wm. E. Bird would suffer in case the title should never be perfected, has been estimated at $500; that it has been agreed that the last named sum should remain in the hands of the said Bird until the plaintiff should cause said title to be perfected as aforesaid; or, in case said title should not be perfected within ten years, then the $500 should become the property of Bird. And the condition then is, that Bird shall pay the $500, upon and after the perfecting of the title. These recitals and conditions show, 1. That the *intention* of the parties was to perfect the title. 2. That the giving releases was the only mode (then supposed) of making the title perfect. 3. That a release was not required as a caprice, nor in pursuance of any imperative demand; that it was only required as a means to an end, not the end itself. That end was to perfect the title.

IX. The title being perfect when the bond was signed, the object and intention of the bond had no longer any force. The money was justly due, and should have been immediately paid. The ten years limited for payment having expired before suit was brought, the money is now actually due.

*By the Court,* INGRAHAM, P. J. So far as this judgment directs the reformation of the bond by striking out portions of it, it was erroneous. There was no evidence to show that the bond was not drawn in exact conformity to the agreement made between the parties, previously. On the contrary, the complaint alleges that the bond was drawn according to the agreement between the parties. It is clear that both obligor and obligee understood that the bond should contain the provisions which were ordered to be stricken out. The reason given for reforming the bond is that the plaintiff employed a lawyer, who gave him bad advice, and who thereby deceived him as to his rights, and thus induced him to execute the bond.

Garnar *v.* Bird.

Such a ground furnished no authority to alter the contract of the parties. The authority which a court of equity has to reform a written instrument does not extend to any alteration of a contract, but only to making the contract in which a mistake has been made, correct, by conforming it to what was actually agreed upon between them.

In *Leavitt* v. *Palmer*, (3 *N. Y. Rep.* 19,) Bronson, J., in referring to the rules as to reforming a deed, says: " If we could see that there had been a mistake in drawing up the deed, it could not be reformed without filing a bill for that purpose. But what is, if possible, more conclusive, there is not a particle of evidence to show that there was any mistake or accident in preparing the deed, or that it is not just what the parties intended it should be; and it could not be reformed, if a bill had been filed for that purpose. It is true the parties intended to secure the original liability of the bank, but so far as it appears, they intended to do it in the very way it was. done, and that way is illegal. If they mistook the law, we cannot grant relief by making a new contract for them."

Such is precisely this case. The parties have made their contract just as they agreed to. They mistook the law, and they cannot be relieved by our making a new contract for them. Their rights respectively must be settled upon the contract as they made it, subject to such defenses as the law allows.

So in *Stoddard* v. *Hart*, (23 *N. Y. Rep.* 556,) it was held that where everything agreed upon was done, equity will not make a new contract. In *Kent* v. *Manchester*, (29 *Barb.* 595,) the rules applicable to such cases are stated to be that the mistake must be proved; that it must have been a mutual mistake; that the mistake must be of fact and not of law; and the real contract must be proved. Under these rules, this' bond could not have been reformed as asked for.

Nor is the fact of bad advice being given to the plain-

tiff, and followed by him, any ground for altering the provisions contained in that bond. Courts do not relieve from acts done under a false knowledge of the facts, though under a mistake of the law. (*Dupre* v. *Thompson*, 4 *Barb.* 279. *Gilbert* v. *Gilbert*, 9 *id.* 532. *Arthur* v. *Arthur*, 10 *id.* 9. *Nevius* v. *Dunlap*, 33 *N. Y. Rep.* 676.) The parties must be left to other remedies founded on fraud, if it existed; or, if relief can be granted in any case, for mistake of the law, founded on the fact that the adverse party had parted with nothing of any real value. (*Champlin* v. *Laytin*, 6 *Paige*, 189.)

Independent of this question of reformation, there is another, upon which it is necessary to pass, in the decision of this appeal. That is, whether there was any defect in the title, such as the parties supposed to be the case, when the bond was prepared. It is conceded that the boundaries in the conveyance did not include the whole of the lot sold; nor did the decree of sale include any more than was covered by the deed. All the parties interested in the portion of the lot which was outside of the boundary were made parties to the partition proceedings. Under that decree the master sold the whole lot and gave a deed therefor, receiving the purchase money. This money was distributed among the parties. Charlotte E. Fogal, the ancester of the two infant children, whose share is the only one not released, received her share of the proceeds of the estate, including the portion of the lot which belonged to her from another source. The question then arises, whether Mrs. Fogal, having received her share of the proceeds of this land, is not concluded thereby, and estopped from claiming to recover the property from the purchaser. If she was so estopped during her life, her children can have no estate since her death, in these premises.

It has been held that where two persons made partition between them of lands in which one party only had a life estate, and after the partition the interest in the fee de-

scended to the one holding the life estate, who subse-quently sold the part allotted in partition, such sale estop-ped the party selling from claiming any interest in the part allotted to the other. (*Baker* v. *Lorillard,* 4 *N. Y. Rep.* 257.) So a person having the legal title to land, who acquiesces in the sale by another, if he has encouraged the sale, is estopped from asserting, afterwards, his title against the purchaser. (*Storrs* v. *Barker,* 6 *John. Ch.* 166.)

In *Mount* v. *Morton,* (20 *Barb.* 123,) it was held that tenants in common who acted separately, claiming to own separate parcels of the tract, and conveyed such separate parcels, receiving pay therefor, were estopped from claim-ing as tenants in common, and that a previous partition would be presumed. Mitchell, J., says: "If the owners were misled as to the law, and supposed they owned the fee, they ought not the less to be estopped, as they by their acts led others to purchase, under the same belief, and they have each received nearly, if not quite, the same value as they would have received if they had sold the reversion in one fourth of each lot."

In *Rider et al.* v. *The Union India Rubber Co.,* (4 *Bosw.* 169,) it was held, in regard to personal property, that if a person permitted the same to be sold, and acquiesced in the payment therefor, and permitted the purchaser to take possession, he was estopped from afterwards claiming title to the property so sold.

In *Brewster* v. *Baker,* (16 *Barb.* 613,) one Thompson sold a boat belonging to him and others jointly. They knew of the sale, and made no objection, and gave no notice to the contrary, but received from Thompson a portion of the purchase money paid to him. They were held estopped from claiming, against the purchaser, to have any title thereto. The court say: "It is a well established prin-ciple that where the owner of property stands by and sees another sell it as his own to a *bona fide* purchaser, and

makes no objection, and gives no notice of his rights, he will be held to have sanctioned the sale, and will not be permitted to assert his title, afterwards, as against such purchaser. And the same rule, I apprehend, prevails where the owner is informed of a sale of his property by another and does not object to it, or give the purchaser notice of his rights, but permits such purchaser to pay the purchase money as it becomes due to the vendor, and receives a portion of it from the vendor."

The principles deducible from these cases, applied to this case, are amply sufficient to enable us to decide the questions arising therein.

The bond in question was payable if the title was made perfect within ten years. The property for which the bond was given in part payment was a lot on Front street, the rear part of which belonged to several persons in common, who were all parties to a suit for the partition of the same. In the decree the description of the property ordered to be sold did not include the rear of the lot. All the parties having any title to the said lot gave releases, excepting Charlotte E. Fogal. On the sale in partition the whole lot was sold, and was purchased by a person through whom the plaintiff claimed title. Mrs. Fogal was paid, and receipted for, her share of the proceeds of the sale, but no release was obtained from her, before her death. She therefore knew of the sale, made no objection thereto, but received full payment for her share therein. I think there can be no doubt that her acts, in not objecting to the sale, and afterwards receiving payment for her share, estop her and her representatives from now claiming any interest in the said land, and that the sale of this lot under that particular proceeding is to be considered as conveying a good title to the whole lot, although not correctly described in the decree.

If Mrs. Fogal was thus estopped from making any claim,

The People *v.* Gates.

her children have no right or title to the premises, and there is no defect in the title to be remedied.

The title to the lot being perfect, the condition of the bond was fulfilled, and the plaintiff entitled to recover the amount due thereby.

Although a mistake as to the law forms no ground for reforming a contract, yet where a party acting under a mistake of law or of fact does acts which mislead the adverse party, he is estopped, as well as if he was not acting under such mistake. (*See Mount* v. *Morton, supra.*)

The judgment should be affirmed. ·

[FIRST DEPARTMENT, GENERAL TERM, June 6, 1870. *Ingraham,* P. J., and *Geo. G. Barnard,* Justice.]