JOHN. BRIDGES and D. H. CARDER *vs.* O. G. ROBINSON and others.

### At Chambers, March 12, 1877.

PAROL EVIDENCE TO CHANGE THE MODE OF PAYMENT OF A NOTE.—Equity may entertain a bill to rectify a written instrument drafted, by accident, mistake, or fraud, otherwise than according to the agreement of the parties; but, if a person deliberately execute a particular instrument, such as a promissory note, intending it to be what it is in reality, parol testimony is inadmissible, either at law or in equity, to change its terms or alter its legal effect.

MISREPRESENTATIONS OF MATTERS OF OPINION OR INDUCEMENT.—Egregious falsehood in matters of opinion, in which by the exercise of ordinary diligence the other party may form his own judgment, or in matters of inducement, which, while they might constitute a motive for entering into the contract, formed no part of the consideration, such as the advantages of the locality in which a business is conducted, will not vitiate a contract.

MISREPRESENTATIONS OF TITLE, QUALITY, OR QUANTITY.—Misrepresentations fraudulently made as to the title, quality, or quantity of personal articles sold would be a ground for relief, ordinarily, at law, but where the vendor is insolvent and holds the negotiable notes of the purchaser, in equity also, through its injunctive process to prevent a multiplicity of suits.

INJUNCTION—WHEN IT IS THE PROCESS WHICH GIVES JURISDICTION.—The injunction which is granted in such cases, especially if sued out under the pauper's oath, should be rigidly limited to the ultimate protection of the complainant, without impairing the legal rights of the defendant, and ought, therefore, to be restricted to the prohibiting of the defendant from assigning the notes, or any judgment acquired thereon, and from selling under execution without giving a refunding bond.

*McClain*, for complainants.
*Morley*, for defendants.

THE CHANCELLOR:—Motion to dissolve or modify an injunction for the want of equity on the face of the bill.

The bill states that, on the 20th of January, 1877, the complainant Bridges bought from the defendant Robinson a small stock of groceries then in a store on Woodland street, in Edgefield, and also certain articles of property in said store-room, consisting of an ice-chest, scales, stove, etc., and paid $20 in cash and $180 in two mules, and gave his five notes with complainant Carder as surety, four of them for $50 each, falling due 1st of March, 1st of April, 1st of May, and 1st of June, 1877, respectively, and the other for $30, due 1st of July or 1st of August, 1877. That, at the time these notes were executed and delivered, it was positively agreed that defendant Robinson would not transfer them, but would hold them, and so arrange that complainant might pay them chiefly in articles he was dealing in at the grocery, namely, meat and groceries. That Robinson was boarding at the Edgefield House, and it was specially mentioned that complainant might furnish articles from the store to the said house, and by arrangement apply the amount to his notes in the hands of Robinson. That, wholly disregarding all these arrangements, the said Robinson has sold and transferred, in payment of preëxisting debts, the note falling due on the 1st of March to defend-

ant Powers, and the note falling due 1st of April to defendant Warren.

The bill further states that Robinson practised a fraud in the transaction with complainant by representing that he was the owner of all of the articles, when he was not, and never had been, the owner of many of them, namely, the " scales, stove, and so on," amounting in value to between $50 and $100. That the owners have come to the store since the trade and taken these articles away. That Robinson also falsely represented the entire stock of groceries to be in a sound, merchantable condition, when many of them were damaged, and proved a total loss. That the stock of groceries, and the articles to which Robinson had title, were not worth more than $200 paid.

The bill further alleged that Robinson indulged in the most egregious falsehoods in regard to the advantages of the particular locality where the store was situated, and the amount of business he had done, by which complainant was deceived. That he falsely represented that he had commenced business at that place, about one year before, with only one beef, and had made money enough to purchase all that was then in the store, and did not owe any debts, when, in fact, his debts amounted to $500 or $600, or more. That there were two small debts mentioned by him, in reference to which he made an agreement with complainant that he might discharge them with such articles as he is dealing in, and have a credit therefor on his notes ; that complainant has paid $10 on one of these debts, and $10 on the other, but has received no credit for either payment.

On this bill, amended by showing that the ·defendant Powers had recovered judgment on the note transferred to him, the injunction prayed and obtained was to enjoin the defendants from making any assignment of the notes ; that Powers be enjoined from collecting his judgment, and the other defendants from taking any steps whatever towards bringing suit upon the notes held by them. The injunction

was granted, without bond or security, upon the complainants' taking the oath prescribed for poor persons.

The grounds upon which the complainants seek to rest their bill may be thus arranged:

1st. The parol agreements at the execution of the notes.

2d. The egregious falsehoods as to the advantages of the locality.

3d. The fraudulent representations as to the quantity and quality of the property sold.

The rule is that all verbal negotiations and stipulations between the parties to a written instrument, anterior to or contemporaneous with the execution of the instrument, are merged in it, and parol evidence of such stipulations, or to alter or qualify the terms of the instrument, is inadmissible, either at law or in equity. *Woods* v. *Goodrich*, 9 Yerg. 266; *Bank of United States* v. *Dunn*, 6 Pet. 51; 1 Greenl. on Ev. § 275; 4 Ph. on Ev., note 295; *Christmas* v. *Christmas*, Sel. Ca. 20; *Davis* v. *Symonds*, 1 Cox C. C. 404. This rule has been applied by our supreme court to a suit at law upon a promissory note, where the evidence offered was intended, as in the present case, to change the time and mode of payment. *Campbell* v. *Upshaw*, 7 Humph. 185; *Ellis* v. *Hamilton*, 4 Sneed, 512. The same rule was applied in a suit in chancery upon a bill filed for the purpose of having the benefit of similar parol agreements in the case of a bill single. *Hancock* v. *Edwards*, 7 Humph. 349. Equity has the same rule of evidence in this regard as the courts of law. It may entertain a bill to rectify a written instrument drafted, by accident, mistake, or fraud, otherwise than according to the agreement of the parties; but, if the parties deliberately execute a particular instrument, intending it to be what it is in reality, there is no principle upon which oral stipulations can be incorporated into the written instrument, or its legal effect altered. *Hunt* v. *Rousmaniere*, 1 Pet. 1; *Jarvis* v. *Palmer*, 11 Paige, 650. The first ground of relief is, therefore, untenable.

The second ground is even more untenable. A false

assertion of value upon the part of the seller, and highly colored terms of commendation, will not vitiate a contract. Misrepresentations, though false, will not be considered fraudulent where both parties have the means of information, so that by the exercise of ordinary diligence and prudence either may rely upon his own judgment. *Saunders* v. *Hatterman*, 2 Ired. 32. Such assertions are plainly matters of opinion, which it is folly to rely on. *A fortiori*, where the "egregious falsehoods," as in this case, do not relate to the thing sold, but to matter of inducement, such as the advantages of the locality for conducting a business the buyer proposed to enter into with the goods bought. If the law were otherwise, contracts, instead of being binding, would be as unstable as water, and not worth the paper on which they are written. *Speiglemyer* v. *Crawford*, 6 Paige, 256; *Hutchinson* v. *Brown*, 1 Clarke Ch. 416; *Hobbs* v. *Parker*, 31 Maine, 143. These representations constitute the motive for entering into the contract, without forming any part of the consideration. *Philpot* v. *Gruninger*, 14 Wall. 577; *Winton* v. *Fort*, 5 Jones Eq. 253.

Fraudulent representations as to the title of part of the property sold, or as to the quality or quantity of the articles sold, where the means of information were not open to both parties, would, however, stand upon a different footing. To the extent of the damage thereby sustained there would be a failure of consideration, or a right to recoup or recover the loss. The remedy sounding in damages would, ordinarily, be at law, and would be so exclusively if the price has been paid and there has been no offer to return the property purchased. But the existence of several outstanding notes for the price, where the vendor is insolvent, justifies a resort to equity through its injunctive power, and to prevent a multiplicity of suits. *King* v. *Baker*, 1 Yerg. 450.

The claim of set-off, to the extent of the two payments of $10 each, made in the bill, is a purely legal defence, and might have been relied on as a defence to that extent in the

suit of Powers, the note transferred to him having been, according to the complainants' own allegations, received in payment of a preëxisting debt. *Wormley* v. *Lowry,* 1 Humph. 468; *Van Wyck* v. *Norvell,* 2 Humph. 192; *King* v. *Doolittle,* 1 Head, 88; *Rhea* v. *Allison,* 3 Head, 177.

Conceding, however, the jurisdiction of this court by reason of the fraudulent representations as to the title and quality of the articles sold, it remains to be considered to what extent the complainants were entitled to call into requisition the injunctive power of the court. For a motion to dissolve an injunction for want of equity on its face involves, not only the equity on the merits in the bill, but the equity to the injunction granted. There may be merits in the bill, and yet the injunction may be too broad. In the case before us the injunction is of the broadest, with the least protection to the defendants against whom it is made to operate. It has been granted on the oath for poor persons.

The object of the bill is to transfer to this court the trial of the complainant's claim for the fraudulent misrepresentations, by means of its injunctive process. The causes of action of both parties being strictly of legal cognizance, the complainant is only entitled to the injunctive process so far as it may be essential to his protection, without prejudicing the legal rights of the defendants. There is no offer in the bill to pay what may be justly due, nor would such offer deprive the defendants of their legal right to put their notes in the course of collection at law, and to secure themselves by a judgment or execution lien on the property of the complainants. For the absolute control over their bill until decree rendered would enable complainants, after years of litigation, to dismiss their bill, leaving the defendants without redress except by suit at law Under these circumstances the injunction should be limited to the exigency, namely, the protection of the complainants' rights. The extent of the injunction will depend upon the situation of the parties at the filing of the bill.

If, when the bill is filed, the notes are not due, or not

yet sued on, the rights of the complainants would be fully protected by an injunction restraining the defendants from transferring the notes. For such an injunction would impound the notes in the hands of the defendants to abide the event of the litigation, which is all the complainants can reasonably and equitably ask. The defendants would be at liberty to put the notes in suit at law, and to prosecute the same to judgment, and to acquire a lien, either by the judgment or by the execution thereon, upon the property of the complainants. If the defendants are, by injunction, prevented from asserting these legal rights, the complainants obtain an inequitable advantage, should their claim prove not well founded. On the other hand, if the bill is sustained to the full extent of the defendants' demands, the latter will be charged with the costs of the proceedings at law.

If, when the bill is filed, the notes have already been sued on, though not in judgment, the law, as I have recently had occasion to hold, is well settled that equity will require the party seeking its aid to allow judgment to go at law, and will only stay execution. *Chadwell* v. *Jordan*, 2 Tenn. Ch. 635.

Unless, then, the bill is filed after the recovery of judgment, the injunction ought not to restrain the recovery of judgment; for otherwise a legal right would be interfered with without necessity, so far as the debtor's rights are concerned, and it may be to the irreparable damage of the creditor. By statute a debtor who comes into equity for relief after judgment is required, unless prevented by poverty, to give bond, with good security, in double the amount of the judgment, conditioned to pay the debt, damages, and costs awarded on dismissing the bill. Code, § 4439. And the injunction may be dissolved for want of equity in the bill, or upon an answer fully meeting the equity of the bill, the creditor being, however, required to give bond, with good security, to refund the amount collected if so ordered on final hearing. These provisions of

the statute law do sufficiently guard the conflicting rights of the parties wherever they apply.

The case of a person unable from poverty to give a bond requires exceptional care, in order to prevent gross injustice under the letter and forms of law. To grant an injunction in such cases, in the same way and to the same extent as if security were given, would be manifestly inequitable. The limits of the writ should be rigidly confined to what is absolutely necessary to the protection of the applicant. All that he can equitably demand is ultimate safety if his claim be found to be just. As a general rule the creditor ought not to be stayed, either in the recovery of judgment or the levy of execution. The injunction should stay any sale of property under the levy until further order. If the answer meets the equity of the bill, the injunction will be dissolved upon the creditor giving a refunding bond. If the injunction be for any reason retained, the property would remain impounded in the officer's hands, and subject to the orders of the court. In this way the rights of both parties may be guarded, and no grievous wrong inflicted upon either.

The injunction granted in this case will be modified accordingly.